**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

| | | |
|---|---|---|
| **TAMMY MCNEIL, On Behalf of Herself** | ) | |
| **and All Others Similarly Situated,** | ) | |
| | ) | |
| *Plaintiff*, | ) | **COLLECTIVE ACTION** |
| | ) | |
| **v.** | ) | **CASE NO. 4:15-cv-81** |
| | ) | |
| **FANEUIL, INC.,** | ) | |
| | ) | |
| *Defendant*. | ) | |

## PLAINTIFFS' MOTION AND MEMORANDUM FOR THE AWARD OF ATTORNEY'S FEES, EXPENSES, AND COSTS

Plaintiffs submit this motion and memorandum for the award of attorney's fees, expenses, and costs in accordance with this Court's Order of May 12, 2017. (Docket No. 173).

As set forth in greater detail below, Plaintiffs have incurred approximately $939,336.25 in attorney's fees and $70,610.16 in costs and expenses to date. These fees and expenses are all reasonable and necessary under the specific circumstances of this case, and Plaintiffs are entitled to recover the full value of these fees and expenses if this case settles through mediation,[1] or if Plaintiffs ultimately prevail at trial.[2]

Plaintiffs' blended hourly rate in this case—*i.e.* the total requested fee divided by all hours billed—is $341.81, which is comparable to a blended hourly rate this Court approved as reasonable in 2014. Moreover, the specific hourly rates being sought for Plaintiffs' attorneys and

---

[1] Of course, at the settlement conference set for June 6, 2017, the parties could agree to an all inclusive settlement—subject to this Court's approval—which would render any separate motion for fees moot.

[2] If this case is not resolved through settlement and if Plaintiffs ultimately prevail at trial, then Plaintiffs will submit a supplemental fee petition to account for the additional time spent litigating this case through trial.

legal support staff are comparable to the rates Faneuil paid to its own outside employment counsel in 2013.  And, to date, Plaintiffs have prevailed on nearly every meaningful dispute that has arisen in this case.

In addition to these petitioned fees and expenses, Plaintiffs estimate that they will incur an additional $12,000 in fees and expenses litigating this motion, and an additional $18,500 associated with the June 6, 2017 settlement conference.  (See contemporaneously submitted Declaration of David W. Garrison ("Garrison Decl.") ¶ 2).  Plaintiff includes these estimates in accordance with this Court's May 12, 2017 Order.  (Doc. No. 173).

## I.      An Award of Attorney's Fees and Costs to Prevailing Plaintiffs Under the FLSA is Mandatory

The Fair Labor Standards Act ("FLSA") provides that courts "**shall,** in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b) (emphasis added). This provision is intended "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Jackson v. Estelle's Place, LLC*, 391 F. App'x 239, 246 (4th Cir. 2010) (quoting *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994)). To further this purpose, the Fourth Circuit has held that "payment of attorney's fees to employees prevailing in FLSA cases is **mandatory.**" *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984) (citing 29 U.S.C. § 216(b)) (emphasis added).

Moreover, there is no real dispute that Plaintiffs will be "prevailing parties" in this case if they recover *any* of the unpaid overtime they are seeking through either settlement or litigation. Under longstanding Supreme Court precedent, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109, 111

2

(1992) (internal quotations omitted) (finding that the formulation of the term "prevailing party" is "generous" and holding that a plaintiff who wins even nominal damages is a prevailing party). *See also Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) ("a 'prevailing party' is one who has been awarded some relief by the court").

Here, Plaintiffs have sued for backpay and liquidated damages for the minutes they worked at the beginning and end of their shifts, and during their meal periods, that were not properly paid. Any settlement agreement reached between the parties will necessarily involve backpay equal to at least several minutes per plaintiff per day, and is also likely to include payment for liquidated damages. This is more than sufficient to qualify Plaintiffs as the prevailing parties in this litigation and entitle Plaintiffs to recover their reasonable fees and expenses under 29 U.S.C. § 216(b).

Accordingly, so long as Plaintiffs prevail in some form on their FLSA backpay claims, then they are entitled to recover their reasonable attorney's fees and expenses in this case.

## II.    Plaintiffs' Requested Attorneys' Fees of $939,336.25 Compensates Plaintiffs Without Producing a Windfall

While the award of fees to prevailing FLSA plaintiffs is mandatory, the amount of that award is left to the sound discretion of the district court, based on whether the hourly rates and hours worked by Plaintiffs' counsel were reasonable under the circumstances.

Here, as the presumptively prevailing parties, Plaintiffs are petitioning the Court to award attorney's fees totaling $939,336.25, plus expenses of $70,610.16. As the following analysis shows, the total fee sought herein is the product of (1) reasonable billing rates — ranging from $225 to $525 an hour for attorneys and $100 to $150 an hour for legal support staff — that are consistent with what attorneys and professional legal staff of comparable skill and experience

charge within this Division of the Eastern District of Virginia; (2) 2,748.11 hours reasonably expended by counsel; and (3) efficient staffing of this litigation.

This fee is calculated using the lodestar method, which the U.S. Supreme Court has recognized "as the centerpiece of attorney's fee awards.'" *Llora v. H. K. Research Corp.*, No. 96-1552, 1997 U.S. App. LEXIS 29865, at *3 (4th Cir. Oct. 29, 1997) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989)). Under this method, the lodestar is "[t]he product obtained by multiplying reasonable hours spent by a reasonable rate," and this amount is "presumed to be the reasonable fee . . .'" *Saleh v. Moore*, 95 F. Supp. 2d 555, 566 (E.D. Va. 2000) (internal quotations omitted). "[T]here is a 'strong presumption' that the lodestar figure is reasonable." *Jackson v. Estelle's Place, LLC*, 391 F. App'x 239, 245 (4th Cir. 2010) (quoting *Perdue v. Kenny A.*, 559 U.S. 542 (2010)); see also *Almond v. Boyles*, 792 F.2d 451, 456-57 (4th Cir. 1986) (noting that a fee based upon reasonable rates and hours is presumed to be fully compensatory without producing a windfall).

In exceptional circumstances, some courts will adjust that lodestar amount up or down "to account for results obtained and the quality of representation." *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986). However, the Fourth Circuit disapproves of this practice. Instead, under Fourth Circuit jurisprudence, factors favoring an upward or downward adjustment should generally be considered **as part of** the lodestar calculation. *Stacy v. Stroud*, 845 F. Supp. 1135, 1141 (S.D. W.Va. 1993). In particular, courts will often consider some or all of following "*Johnson* factors," which were first articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work;

> (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Jackson v. Estelle's Place, LLC*, 391 F. App'x 239, 243 (4th Cir. 2010) (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 109 (1989).

As described in greater detail below, Plaintiffs' requested fee is the product of both reasonable rates and reasonable hours, and this lodestar amount should not be adjusted.

**A.      Plaintiffs' Counsels' hourly rates are reasonable and appropriate for legal work performed within this legal market.**

Plaintiffs' counsel's hourly rates in this case – ranging from $225 to $525 per hour for attorneys– are reasonable; based on the prevailing rates in this legal market; legal fees that Defendants have paid to their own attorneys; the fact that Plaintiffs' counsel's fee in this case is contingent; the experience of Plaintiffs' counsel; and the preclusion of other employment.

**i.      Claimants' Counsel's Customary Rates are in Line with those Prevailing in the Community for Similar Services by Lawyers of Reasonable Comparable Skill, Experience, and Reputation.**

Generally, the "community in which the court sits is the appropriate starting point for selecting the proper rate." *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988) *See also Donnell v. United States*, 682 F.2d 240, 251 (D.C. Cir. 1982). "Nevertheless, 'the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally.'" *Id.* (quoting *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 (7th Cir. 1982). The Fourth Circuit has identified "two questions to be asked in determining whether an

exception to the general rule should be granted: are services of like quality truly available in the locality where the services are rendered; and did the party choosing the attorney from elsewhere act reasonably in making that choice?" *Hanson*, 859 F.2d at 317 (citing *Chrapliwy*, 670 F.2d at 769; *see also Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009)) ("First, tribunals should ask if extrajurisdictional counsel rendered services that were truly available in the visited market. Second, tribunals should ask if the party that hired extrajurisdictional attorney chose reasonably, or whether they chose an unnecessarily expensive attorney." Internal citations omitted.)).

Here, the rates sought by Plaintiffs are in line with other fee awards in this district and are commensurate with the local market rates. For example, in 2014, this Court approved a blended rate for attorneys and paralegals of $312 per hour in the FLSA collective action *Winingear v. City of Norfolk*, 2:12-cv-560, 2014 U.S. Dist. LEXIS 97392 (E.D. Va. July 14, 2014) (Morgan, J.); *see also Gregory v. Belfor USA Group*, 2:12-cv-11, 2014 U.S. Dist. LEXIS 14296 (E.D. Va. Feb. 4, 2014) (approving of blended rate approach). Here, in 2017, Plaintiffs are seeking a blended rate of $341.81 per hour, a total increase of only $29.81 per hour (equal to a little under 9%, or three percent each year) above the $312 per hour approved by this Court three years ago.

Moreover, Plaintiffs are contemporaneously submitting declarations from Harris D. Butler, III and Nicholas Woodfield, well-respected employment lawyers who practice extensively in Virginia and who focus their practices on wage and hour collective action litigation. Mr. Butler and Mr. Woodfield both specifically state in their declarations that the rates being sought by Plaintiffs' counsel are reasonable for this legal market. (H. Butler Decl. ¶¶ 18-19); (Woodfield Decl. ¶¶ 12-13). Plaintiffs' counsel are also submitting declarations from practitioners within their own respective legal markets, to show that their requested rates are also

reasonable within those home markets.  Specifically, Plaintiffs are submitting declarations from W. Michael Hamilton and Michael L. Russell, lawyers in Nashville, Tennessee, who focus their practices on complex litigation and who attest to the fact that the rates sought by Barrett Johnston Martin & Garrison, LLC, and by the Yezbak Law Offices are reasonable for that legal market, and the declaration of Christopher B. Butler, from Atlanta, who attests to the fact that the rates sought by Mays & Kerr are reasonable within that legal market.

Plaintiffs also note that Faneuil's counsel in employment matters, Williams Mullen, in 2013 charged Faneuil rates ranging from $310 to $645 for partners, from $225 to $380 for associates, from $140 to $215 for paralegals, and from $160 to $210 for litigation support.[3] Courts in this Circuit have held that attorney's fees paid by the defendant can be relevant in considering the reasonableness of the fees sought by plaintiffs.  *E.g. Stastny v. Southern Bell Tel. & Tel. Co.*, 77 F.R.D. 662, 663 (W.D. N.C. 1978).  The rates sought by Plaintiffs' counsel today are consistent with what Faneuil paid to its own outside employment counsel *four years ago*.  If anything, the rates that Plaintiffs' counsel seeks are on the low end of these four-year-old Williams Mullen fee scales.  The fact that Faneuil—a company headquartered in Hampton, Virigina (Doc. No. 1, Compl. ¶ 8)—has paid its own outside counsel at higher rates than what Plaintiffs are seeking now, is further evidence that the fees requested by Plaintiffs' counsel in this case are reasonable.[4]

---

[3]    This engagement agreement was produced in this litigation in response to a subpoena issued by Plaintiffs seeking relevant document information related to Defendant's good faith defense.  Defendant identified Sara Rafal as a witness with knowledge of the facts related to its good faith defense.  Ms. Rafal was deposed by Plaintiffs in accordance with this Court's May 12, 2017 Order. (Docket No. 173).  Plaintiff is providing a copy of this engagement agreement to the Court Court's for its own in camera review, but is not filing that agreement at this time.

[4]    During the course of discovery, Plaintiffs also requested that Faneuil's counsel in this case produce records of their billing rates, but they have never responded to that request.  To the extent that Defendants seek to challenge the reasonableness of Plaintiffs' counsel's rates, then

Based on this evidence, the rates that Plaintiffs' counsel are seeking in this case are reasonable for this judicial district,[5] and should be awarded as requested.

### ii.    Contingency Fees Favor Awarding the Lodestar

Plaintiffs' counsel in this case have all agreed to be compensated on a contingent fee basis.   As part of their agreement with Plaintiffs, Plaintiffs' counsel has agreed not only to advance all time associated with prosecuting this case to completion, but also to advance all expenses required to prosecute this litigation.   Here, counsel for Plaintiffs have invested approximately $939,336.25 in billable time and $70,610.16 in expenses to successfully prosecute this case for the Plaintiffs—all on a contingent basis.

As set forth in the submissions of Plaintiffs' counsel, Plaintiffs' counsel accepts most of their cases on a contingent risk basis – expecting no payment of their firms' fees or costs unless they prevail in the litigation.   Typically, Plaintiffs' counsel anticipates that they will work on some cases for several years without payment and with the risk that they will be paid nothing if they lose.   (*See* Yezbak Decl. ¶ 28-29). Therefore, it is vital to their practice to recover their full lodestar amounts (or even an enhancement) and all expenses when they prevail. (*See* Hamilton Decl. ¶ 13); (*see also* H. Butler Decl. ¶ 20). If Plaintiffs' counsel could not obtain such recoveries when successful, they could not afford to accept and litigate employment cases at all,

---

Plaintiffs request that the Court require Defendants to produce their current counsel's billing records.

[5]     Even if the Court determines that Plaintiffs' rates are higher than are customary in the local community, in ascertaining the proper "community" for establishing the market rates, district courts may "look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases." *McHugh v. Olympia Entertainment, Inc.,* 37 Fed. App'x 730, 740 (6th Cir. 2002).   The Fourth Circuit has noted: "Rates charged by attorneys in other cities, however, may be considered when 'the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally,' and the party choosing the attorney from elsewhere acted reasonably in making the choice." *Rum Creek Coal Sales v. Caperton,* 31 F.3d 169, 179 (4th Cir. 1994) (citing *National Wildlife Federation v. Hanson,* 859 F.2d 313, 317 (4th Cir. 1988)).

which would defeat the basic purpose of the FLSA's fee shifting provisions. (Woodfield Decl. ¶ 16) ("I believe that it is important for lawyers who take on such matters on a contingency basis to be able to recover their attorneys' fees at hourly rates that are commensurate with those billed by the most qualified lawyers in the bar."); (*see also* H. Butler Decl. ¶ 20).

Courts within this circuit have expressly held that attorneys who take cases on a contingent fee basis are generally entitled to fees on the higher end of prevailing market rates when they prevail. *Pellegrin v. Nat'l Union Fire Ins. (In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245-46 (4th Cir. 2010) (finding that the district court erred in its fee decision by "failing to consider the access to the legal system that contingency fees like the ones herein provide"); *Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 768 (D. Md. 2001) (noting that the "considerable risks" involved in contingent fee litigation supported application of the "highest prevailing rate" for successful attorneys); *W. Virginians for Life v. Smith*, 952 F. Supp. 342, 347 (S.D. W. Va. 1996) ("The court believes this risk is a further factor which entitles counsel to be compensated at the rates they have requested.").

Accordingly, the contingent nature of counsel's representation of Plaintiffs is further evidence that the rates that Plaintiffs' counsel are requesting are reasonable.

### iii.   The Experience, Reputation, and Ability of the Attorneys

This factor also supports the full award of the hourly rates that Plaintiffs' counsel seeks. As set forth in the declarations of Yezbak, Garrison, and Mays, as well as the declarations of W. Michael Hamilton and Michael L Russell, the attorneys in this case are very experienced with FLSA collective actions and have been recognized by their peers as being excellent attorneys with exceptional abilities. (Garrison Decl. ¶¶ 4-5); (Yezbak Decl. ¶¶ 9-14); (Mays Decl. ¶¶ 4-6); (Hamilton Decl. ¶¶ 9-10); (Russell Decl. ¶ 7); (C. Butler Decl. ¶ 6).

### iv.     Preclusion of Other Employment

This case has involved significant discovery and the potential for even more significant discovery.  Once a scheduling order was entered in this case, it required Plaintiffs' counsel to reserve a large number of dates for discovery, and required careful planning so that resources would be available to review documents, prepare for approximately 30 discovery depositions, travel to those depositions, take depositions of trial witnesses who were not deposed, prepare for and attend trial.  In short, this case dominated the schedules of some counsel and would have dominated the schedules of all counsel had discovery been completed and a trial held.  (Yezbak Decl. ¶¶ 30-31).  As such, counsel for the plaintiffs had to turn down or delay other cases.  The impact of which is that the opportunity cost of this case was significant for counsel.  Therefore, this factor supports awarding Plaintiffs' counsel their full hourly rates and lodestar amounts.

### B.     Plaintiffs' counsel performed a reasonable and necessary amount of work representing Plaintiffs in this matter.

Once the Court establishes the reasonable hourly rates for the prevailing party's counsel, the second half of the lodestar analysis is determining the number of hours reasonably expended. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).  To establish that the hours expended were reasonable, the prevailing party must submit evidence "supporting the hours worked" and the exercise of "billing judgment."  *Hyatt v. Barnhart*, 315 F.3d 239, 254 (4th Cir. 2002) (citing *Hensley* 461 U.S. at 434).

### i.     The 2,748.11 hours that Plaintiffs' Counsel expended in litigating this action has been reasonable.

Here, Plaintiffs' counsel have submitted detailed records for all 2,748.11 hours worked to date, demonstrating that these hours were reasonably expended.  Specifically, these detailed billing records are attached as exhibits to the contemporaneously filed declarations of David W.

Garrison, Charles P. Yezbak, John L. Mays, and Christian Connell.[6] Additionally, as set forth below, the complexity of the issues involved in this case, combined with the time and labor that Plaintiffs' counsel had to expend as a result of Defendant's scorched-earth litigation tactics, (*i.e.* *Johnson* factors 1 & 2), further demonstrates that the time spent in litigating this case has been reasonable.

A review of the proceedings in this case demonstrates that Plaintiffs attempted to resolve this dispute efficiently but were thwarted by Defendant's aggressive defense tactics. On July 31, 2015, Plaintiffs filed a detailed complaint putting Defendant on notice of their claims. (Docket No. 1). On October 14, 2015, before Defendant even filed an answer, Plaintiffs filed a detailed motion for conditional certification. (Docket. No. 14). Nevertheless, Defendant filed a motion to dismiss the Plaintiffs' Complaint. (Docket. No. 20). This motion delayed matters and required unnecessary work researching and determining proper pleading standards. Rather than expend additional resources briefing the issues, Plaintiffs filed an amended complaint that addressed the alleged deficiencies in Defendant's motion. (Docket. No. 24). Still, Defendant was not satisfied that Plaintiffs had met the very low threshold for notice pleading, despite the fact that Defendant had the benefit of the motion and memorandum of law detailing Plaintiffs' allegations in the notice motion. (Docket Nos. 20, 21, and 24). Instead, Defendant filed a second motion to dismiss, to which Plaintiffs had to respond, and on which Plaintiff prevailed. (Docket Nos. 36, 37, and 38).

Then, rather than consent to the reasonable notice requested by Plaintiffs, Defendant refused. After notice was ordered by the Court, rather than agree to the contents of Plaintiffs'

---

[6]     Because litigation in this case ongoing, Plaintiffs have redacted any statements in their billing records covered by the attorney client privilege or attorney work product privilege. Unredacted copies of these billing records are being provided to the Court via U.S. Mail for in camera review.

proposed notice, Defendant fought.  Defendant's refusal to agree to a reasonable notice sent to people obviously impacted by a common policy, led to two full rounds of briefing on the notice, briefing the contents of the proposed notice, briefing on the contents of a website, two hearings on notice, and a round of discovery limited to notice issues.  (*See, e.g.*, Docket Nos. 14, 15, 26, 30, 32, 33, 35, 54, 61, 62, 85, 86, 87, 91, 95, 100, 105).  Similarly, Defendant sought exclude 11 opt-in plaintiffs who sought to join the case, necessitating a round of briefing on this issue as well—on which Plaintiffs prevailed.  (*See* Docket Nos. 96, 99, 101, and 109).

Similarly, Defendant's unreasonable refusals and delays in providing time and pay records resulted in an inability to engage in meaningful settlement negotiations until after significant discovery had been completed.[7]  Plaintiffs responded to 35 sets of written discovery and sat for 8 depositions before ever receiving data from which they could begin to formulate a settlement demand.  Plaintiffs and their counsel brought up the topic of settlement early and regularly and mentioned the fact that damages were relatively modest in this case such that an early settlement and efficient discovery process was in everyone's best interest. (Yezbak Decl. ¶¶ 4-5); (Garrison Decl. ¶ 17).  Although Defendant expressed agreement with this sentiment and indicated a willingness to engage in settlement negotiations, such negotiations were stalled solely as a result of Defendant not timely producing documents and information necessary to engage in such negotiations.  (Yezbak Decl. ¶¶ 4-5).

In short, Defendant chose to aggressively litigate matters in which it had little hope of prevailing, delayed the production of documents such that early settlement was impossible, and

---

[7]     Indeed, Defendant's dilatory discovery tactics ultimately required Plaintiffs to file a motion to compel—on which they were successful.  (*See* Docket No. 156) (Order granting motion to compel).

generally litigated this case in a way that increased the time, expenses, and effort required by Plaintiffs.

A reasonable attorney's fee award must take into account whether the defendant mounted an aggressive defense. *See, e.g.*, *Blake v. Balt. Cty.*, 12 F. Supp. 3d 771, 777 (D. Md. 2012) ("'Those who elect a militant defense are responsible for the time and effort they extract from their opponent. A party cannot litigate tenaciously and then complain about the time spent by the opposing party in response.'") (quoting *Imgarten v. Bellboy Corp.*, 383 F. Supp. 2d 825, 840 (D. Md. 2005)); *see also City of Riverside v. Rivera*, 477 U.S. 561, 580-81 n.11 (1986) ("The [defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response") (internal citation omitted); *Copeland v. Marshall*, 641 F.2d 880, 904 n.53 (D.C. Cir. 1980)); *Frank Music Corp. v. MGM, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("Although [defendants] had the right to play hardball in contest-ing [plaintiffs'] claims, it is also appropriate that [defendants] bear the cost of their obstructionist strategy") (internal quotations omitted); *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998) ("one of the factors useful in evaluating the reasonableness of the number of attorney hours in a fee request is the responses necessitated by the maneuvering of the other side") (citations omitted); *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1998) (justifying an increased fee award to the plaintiffs due to the defendant's "Stalingrad defense"); *Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir.1977) ("Obviously, the more stubborn the opposition, the more time would be required. . . .").

Based on the needs of the case and the defense mounted by Defendant, the first and second *Johnson* factors support awarding Plaintiffs' fees and costs as requested.

## III. Plaintiffs' Requested Lodestar Fees are Reasonable and Should Not Be Adjusted

As noted above, there is a strong presumption in this Circuit that the lodestar—*i.e.* Plaintiffs' counsel's reasonable hourly rates multiplied by the number of hours reasonably expended—is the proper measure of attorney's fees to award to a prevailing FLSA Plaintiff. However, the Fourth Circuit has noted that "[w]hen plaintiff prevails on only some of the claims made, the number of hours may be adjusted downward." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174-75 (4th Cir. 1994). Accordingly, although the actual, final resolution of Plaintiffs' claims in this case has not yet occurred, it is worth discussing this "degree of success" question at some length, to dispel any notion that the lodestar amount in this case should be reduced simply because of the amount that Plaintiffs are likely to recover.

The Fourth Circuit has recognized that the damage award in FLSA cases should not be the focus of a fee request, as it stated:

> The size of the damage award carries even less weight here given that the case arose under the fee-shifting provision of the FLSA. *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999) ("Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation."); *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) ("The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourage[s] the vindication of congressionally identified policies and rights." (alteration in original) (internal quotation marks and citations omitted). Thus, by subjectively labeling the employees' success "modest" and failing to look at the success of the employees' claims "in comparison to the scope of the litigation as a whole," *Hensley*, 461 U.S. at 440, the court abused its discretion.

*Jackson v. Estelle's Place, LLC*, 391 F. App'x 239, 246 (4th Cir. 2010).

Other courts across the country have taken the same position, making clear that "transfixion on the damage amount in establishing fees would penalize those litigants whose cases carry slight pecuniary damages, but which present instances of significant statutory violations." *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n Local 307 v. G&M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 503 (6th Cir. 1984). "[A] low damages award . . . alone should not lead the district court to reduce a fee award." *Hallowell v. Orleans Regional Hosp.*, 217 F.3d 379, 392 (5th Cir. 2000); *see also Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 558 (7th Cir. 1999) (in FLSA cases, "an attorney's failure to obtain every dollar sought on behalf of his client does not automatically mean that the modified lodestar amount should be reduced"). Thus, courts have awarded substantial attorney's fees even where the amounts recovered by plaintiffs were several times less than what they originally sought. *See Singer v. City of Waco*, 324 F.3d 813, 829-30 (5th Cir. 2003) (declining to reduce the lodestar even though plaintiffs sought $5 million in damages and only collected $180,000).[8]

As the Second Circuit has noted, "[t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *Millea v. Metro-*

---

[8]     *See also, Fegley*, 19 F.3d 1126 at 1134-35 (upholding award of $40,000 in attorneys' fees where plaintiff recovered nominal damages); *Grant v. Shaw Envtl., Inc.*, No. 3:08-CV-350, 2013 U.S. Dist. LEXIS 44095 (E.D. Tenn. Mar. 28, 2013) ($80,500 in fees for a $6,900 award of damages); *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) ($245,766.75 in fees for $33,350 in damages in civil rights case); *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313 (M.D. Fla. 2001) (awarding $352,225.40 in attorneys' fees where the recovery was $21,000); *Cunningham v. Gibson Elec. Co., Inc.*, 63 F. Supp. 2d 891 (N.D. Ill. 1999) ($130,357.50 in fees awarded where damages recovery was $37,808.78); *Almendarez v. J.T.T. Enterprises Corp.*, No. CIV. JKS 06-68, 2010 U.S. Dist. LEXIS 88043 (D. Md. Aug. 25, 2010) ($84,058.00 fee award for approximately $3,300 in damages); *Spano v. Simendinger*, 613 F. Supp. 124 (S.D.N.Y. 1985) (awarding $62,078.21 in fees where damages award was $2,500); *Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 644 (D. Md. 2012) ($110,115.94 in fee and $13,940.08 awarded in damages); *Castel v. Advantis Real Estate Servs. Co.*, No. CIV. A. 2:07CV435, 2008 U.S. Dist. LEXIS 61318 (E.D. Va. Aug. 8, 2008) (awarding of $139,668.00 in fees where maximum recovery was $28,000).

*North R.R.*, 658 F.3d 154, 169 (2d Cir. 2011).   Indeed, "[f]ee-shifting provisions signal Congress' intent that violations of particular laws be punished, and not just large violations that would already be checked through the incentives of the American Rule."   *Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 545 (7th Cir. 2009).   "The function of an award of attorney's fees is to encourage the bringing of meritorious . . . claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *Rivera*, 477 U.S. at 578 (quotation marks and citation omitted).   As the Seventh Circuit explained:

> Because Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy. . . . Fee-shifting would not 'discourage petty tyranny' if attorney's fees were capped or measured by the amount in controversy.

*Anderson*, 578 F.3d at 545 (citations omitted).   "[S]mall claims can be complex . . . a fee request that dwarfs the damages award might raise a red flag, [but] measuring fees against damages will not explain whether the fees are reasonable in any particular case."   *Id.* at 546; *See also Rivera*, 477 U.S. 561 at 578 (rejecting a "rule of proportionality" and holding that counsel must be compensated "for all time reasonably expended on a case"); *Moore v. Freeman*, 355 F.3d 558, 566 (6th Cir. 2004) ("attorney's fees should not be reduced by the ratio of successful claims to claims overall").

To date, there is no real argument that Plaintiffs have been unsuccessful on any of their claims in this case.   They have prevailed on almost every motion that was filed in this Court—most of them unnecessary but for Defendant's litigation tactics—including Defendant's motion to dismiss, both motions for conditional certification, Plaintiffs' motion to compel discovery, and Defendant's motion to quash subpoenas.

16

Moreover, assuming that this case settles at or near the roughly 6.5 minutes per plaintiff per day that the parties already tentatively agreed to, plus the chance to have these damages liquidated by the Court, that substantive result will be an excellent one.  Defendant was required by the FLSA to keep and maintain accurate time records, and because it failed to do so, Plaintiffs were forced to estimate the amount of unpaid time they worked.  It is an extremely difficult task for Plaintiffs to estimate a precise number minutes worked without pay months or years after performing the work.  Nevertheless, Plaintiffs provided their best estimated which varied by which counsel determined were most likely between 7 and 12 minutes a day of off the clock work for most workers, including time pre-shift, post-shift and during the unpaid mean periods. Under these circumstances, obtaining a settlement of 6.5 minutes per day per plaintiff without the risk of trial is a significant victory.  Accordingly, there is no issue here concerning Plaintiffs' lack of success.  Instead, the issue is simply that this substantive recovery may prove to be comparatively small relative to the requested fees.  However, such a result is to be expected in a case involving underpayments of several minutes per day in which Defendant has aggressively litigated.

Following the lead of the Supreme Court, the Fourth Circuit has "explicitly rejected the notion that a court may calculate an award of attorneys' fees by means of a purely mathematical comparison between the number of claims pressed and the number prevailed upon" as "'such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors.'" *Brodziak v. Runyon*, 145 F.3d 194, 196-97 (4th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435, n. 11 (1983)).  Instead, "the appropriate inquiry concerns whether the claims on which the plaintiff prevailed are related to those on which he did not." *Id*. When "all claims 'involve a common core of fact … much of counsel's time will be devoted generally

to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.'" *Runyon*, 145 F.3d 194 at 197, quoting *Hensley*, 461 U.S. 424 at 435.

Accordingly, based on Plaintiffs' success at every stage of this litigation, the fact that Plaintiffs' requested fees surpass Plaintiffs' recovery is no reason to depart from the lodestar amount.

### V.     Plaintiffs are entitled to an award of $70,610.16 for their reasonable costs and expenses

In addition to their attorney's fees, Plaintiffs are also seeking $70,610.16 in expenses. Federal Rule of Civil Procedure 54 provides for the award of certain costs to any prevailing party.  The specific costs that a Plaintiff may recover under Rule 54 are those categories of costs specifically set forth under 28 U.S.C. § 1920, and include such items as copying costs, deposition transcript costs, and filing fees.  Under the fee shifting provision of the FLSA, however, courts are permitted to go beyond the limits of § 1920 and to include "litigation expenses" as part of the reasonable attorney's fee.  *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988).

In this case, Plaintiffs have incurred the following costs and expenses for which they seek compensation:

1.     Discovery costs, including deposition transcripts and video: $13,736.74;

2.     Expert costs: $17,373.55;

3.     Mailing notice to putative plaintiffs and other administrative costs: $15,306.87;

4.     Travel costs: $17,231.70;

5.     Mediation costs: $6,959.30.

These costs have are all reasonable, and were necessarily incurred in Plaintiffs' litigation of this action.  A more detailed breakdown and explanation of these costs and expenses is

contained within the contemporaneously filed Declaration of David W. Garrison. (See Garrison Decl. ¶¶ 10-17).

Given the reasonableness of these claimed costs and expenses, Plaintiffs request that these costs and expenses be included as part of any attorney's fee award by this Court.

## CONCLUSION

For the reasons stated above, Plaintiffs are entitled to an award of reasonable attorneys' fees totaling $939,336.25 and litigation expenses totaling $70,610.16. Thus, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses.

Respectfully submitted,

By: _____/s/_____
CHRISTIAN CONNELL
VSB No. 35009
CHRISTIAN L. CONNELL, P.C.
555 East Main Street, Suite 1102
Norfolk, Virginia 23510
Telephone: (757) 533-6500
Facsimile: (757) 299-4770
christian.connell@outlook.com

CHARLES P. YEZBAK
TN Bar No. 18965
YEZBAK LAW OFFICES
2002 Richard Jones Road, Suite B-200
Nashville, TN 37215
Telephone: (615) 250-2000
Facsimile: (615) 250-2020
yezbak@yezbaklaw.com

JOHN L. MAYS (GA Bar No. 986574)
MAYS & KERR LLC
235 Peachtree Street NE
North Tower, Suite 202
Atlanta, GA 30303

DAVID W. GARRISON (TN Bar No. 24968)
JOSHUA A. FRANK (TN Bar No. 33294)
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
stift@barrettjohnston.com
jfrank@barrettjohnston.com

19

Telephone: (404) 410-7998
Facsimile: (404) 855-4066
john@maysandkerr.com                    *Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2017, I filed the foregoing PLAINTIFFS' MOTION AND MEMORANDUM FOR THE AWARD OF ATTORNEY'S FEES, EXPENSES, AND COSTS via the Court's electronic filing system, which will automatically send electronic notice of such filing on the following counsel of record for Defendant:

>           Ms. Jacqueline C. Hedblom (jhedblom@hf-law.com)
>           Mr. Robert R. Vieth (rvieth@hf-law.com)
>           Hirschler Fleischer, A Professional Corporation
>           Post Office Box 500
>           Richmond, Virginia 23218-0500


By:     /s/ Christian Connell
        CHRISTIAN CONNELL
        VSB No. 35009
        CHRISTIAN L. CONNELL, P.C.
        555 East Main Street, Suite 1102
        Norfolk, Virginia 23510
        Telephone: (757) 533-6500
        Facsimile: (757) 299-4770
        christian.connell@outlook.com