UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

TAMMY MCNEIL,
*On Behalf of Herself and*
*All Others Similarly Situated*,

        Plaintiffs,

v.                                                                                  ACTION NO. 4:15cv81

FANEUIL, INC.,

        Defendant.

**UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

This case comes before the Court on the parties' joint motion for settlement approval. ECF No. 194. By order of reference dated June 8, 2017, ECF No. 192, this matter was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons stated herein, the Court RECOMMENDS that the parties' joint motion for settlement approval be GRANTED.

**I. FACTUAL BACKGROUND**

This is a collective action brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. The named plaintiff, Tammy McNeil ("McNeil"), filed an amended complaint on November 18, 2015, individually and on behalf of other similarly situated employees, against defendant Faneuil, Inc. ("Faneuil"). Am. Compl., ECF No. 24. Faneuil, a Delaware corporation with its principal office in Hampton, Virginia, "employs thousands of individuals nationwide who work handling telephone calls on behalf of [its] clients." Am.

Compl. ¶ 8. Ms. McNeil worked for Faneuil at its Hampton, Virginia call center as an" hourly-paid, FLSA non-exempt Customer Service Representative" ("CSR") from on or around January 3, 2014 until on or around October 2014. Am. Compl. ¶ 7. She continued working at the same location as a "Team Lead and supervisor" until on or around June 2, 2015. Am. Compl. ¶ 7.

The amended complaint alleges that Faneuil's call center employees were not paid for certain time worked at the beginning and end of their shifts and at the beginning and end of unpaid meal breaks, in violation of the FLSA. *E.g.*, Am. Compl. ¶¶ 2, 30, 40, 51–55. Specifically, Faneuil rounded the time worked of its hourly-paid employees to the nearest quarter hour. Am. Compl. ¶ 15. Other Faneuil policies prohibited call center workers from clocking in earlier than five minutes prior to the scheduled start of their shift and marked them tardy if they clocked in after their scheduled shift began. Am. Compl. ¶ 17. Faneuil punished employees for arriving late. Am. Compl. ¶¶ 16–17. The amended complaint alleges that the rounding policy, when applied in conjunction with these other Faneuil time policies, disproportionately favored Faneuil at the expense of Faneuil employees and resulted in wage compensation for less than the actual time worked. Am. Compl. ¶ 17.

The Court granted plaintiffs' motion for conditional certification of a nationwide collective class and court-supervised notice, ECF No. 105, and over 1,000 individuals opted into the case (collectively "plaintiffs").[1] ECF No. 195 at 2, 4.

---

[1] Plaintiffs state that "ultimately 1,060 Opt-in Plaintiffs from across the country joined this action." ECF No. 195 at 2. According to plaintiffs, Faneuil provided time and payroll data for 776 plaintiffs and provided no data or incomplete data for 293 plaintiffs. *Id*. at 4. Those numbers add up to 1,069 plaintiffs.

## II.  PROCEDURAL HISTORY

The parties litigated this case aggressively.  Plaintiffs filed an initial complaint on July 31, 2015.  ECF No. 1.  On October 14, 2015, plaintiffs moved for conditional certification of a nationwide class and court-supervised notice.  ECF No. 14.  Faneuil opposed the motion and moved to dismiss the complaint pursuant to Rule 12(b)(6).  ECF Nos. 20, 26.  On November 18, 2015, plaintiffs filed an amended complaint.  ECF No. 24.  Faneuil moved to dismiss the amended complaint pursuant to Rule 12(b)(6).  ECF No. 36.  On March 1, 2016, after full briefing on both matters, the Court held a hearing on the motion for certification and notice and the motion to dismiss.  ECF No. 54.  The Court denied Faneuil's motion to dismiss, and granted plaintiffs' motion for conditional certification and court-supervised notice as to employees in Virginia.  ECF Nos. 55, 56.  The Court took the issue of nationwide certification under advisement and allowed discovery on that issue.  ECF No. 56.  On March 11, 2016, the parties notified the Court that they could not agree on a proposed notice.  ECF Nos. 61, 62.  "[T]he Court resolved this matter via email on March 16, 2016."  ECF No. 72 at 4.  After taking discovery, plaintiffs moved again for conditional certification of a nationwide class and court-supervised notice.  ECF No. 85.  The parties fully briefed the matter, and the Court granted plaintiffs' motion on August 3, 2016.  ECF No. 105.

On March 11, 2016, plaintiffs filed a motion requesting equitable tolling of the FLSA statute of limitations.  ECF No. 59.  The parties fully briefed the matter and the Court denied the motion at a hearing on April 12, 2016.  ECF Nos. 72, 73.

Discovery opened on April 26, 2016.  *See* ECF No. 76.  On August 2, 2016, Faneuil moved to compel responses to its requests for production of documents and for production of documents from McNeil.  ECF No. 102.  Plaintiffs opposed the motion, but the parties later

3

submitted an agreed discovery plan, which the Court approved. ECF Nos. 108, 121, 124. On February 1, 2017, plaintiffs filed a motion to compel the production of documents and electronically-stored information, which Faneuil opposed. ECF Nos. 131, 142. On February 13, 2017, in an effort to obtain employment-related information, plaintiffs issued subpoenas to produce documents to three non-party vendors who maintained e-mail and timekeeping systems for Faneuil. ECF Nos. 150, 150-1, 150-2, 150-3. In response, Faneuil moved to quash the subpoenas and moved for entry of a protective order to require that plaintiffs obtain leave of court before issuing any other subpoenas to Faneuil's third-party software vendors. ECF No. 149. The parties participated in private mediation on March 9, 2017, but were unable to reach an agreement at that time. ECF No. 195 at 3. The parties "resumed discovery, which included the depositions of four of Faneuil's corporate representatives, additional written discovery requests, and related motion[s] practice." *Id*.

At a hearing on April 6, 2017, the Court heard argument on plaintiffs' motion to compel and Faneuil's motion to quash subpoenas and for a protective order. ECF No. 155. With respect to plaintiffs' motion to compel, the Court ordered that Faneuil produce certain categories of material and ordered that plaintiffs' be allowed to conduct further depositions. ECF No. 156. The Court granted in part and denied in part Faneuil's motion limiting the scope of one of plaintiffs' subpoenas. ECF No. 157. The parties also voluntarily agreed to limitations on the three subpoenas. *Id*.

On April 7, 2017, plaintiffs moved for partial summary judgment and for leave to file a subsequent motion for summary judgment as to discrete issues. ECF No. 158. On April 14, 2017, Faneuil filed a motion to compel the depositions of 24 opt-in plaintiffs. ECF Nos. 163, 164, 164-11.

On April 21, 2017, before further briefing on plaintiffs' motion for partial summary judgment or Faneuil's motion to compel, the parties filed a joint motion notifying the Court that they had reached a settlement and requesting that the Court hold a hearing on the parties' request for approval of the settlement agreement. ECF No. 165. On May 4, 2017, plaintiffs filed a position statement describing the settlement terms agreed to by plaintiffs. ECF No. 167. Plaintiffs requested that the Court approve the settlement as described, or, in the alternative, that the Court find "that there was no meeting of the minds between the parties and enter a new scheduling order establishing a new trial date." ECF No. 167 at 1. The next day, Faneuil moved to enforce and approve the settlement agreement, stating that, after providing notice to the Court of the settlement, plaintiffs "have attempted to fundamentally change the material terms of the agreement." ECF No. 169 at 1. The Court held a hearing to address settlement approval on May 10, 2017. ECF No. 171. At the hearing, the Court found that the case had not settled. ECF Nos. 171, 173. The Court ordered the parties to engage in a settlement conference with United States Magistrate Judge Douglas E. Miller. ECF Nos. 171, 173.

On May 26, 2017, prior to the settlement conference, plaintiffs filed a motion for attorneys' fees, expenses, and costs. ECF No. 178. At the settlement conference on June 6, 2017, the parties "reached an agreement on all of the matters set for trial, except that they reserved the issue of determining reasonable attorneys' fees to this Court." ECF No. 192 at 1. Specifically, the parties agreed that Faneuil will pay $285,000.00 "in full settlement of [plaintiffs'] claims for wages, liquidated damages, and service payments to class members," and that plaintiffs constitute a prevailing party under the FLSA. ECF No. 194-1 at 1 (settlement term sheet). The parties also agreed to prepare additional briefing on the issue of attorneys' fees, and the undersigned set a briefing schedule. ECF Nos. 192, 193.

The parties filed a joint motion for approval of the settlement on June 30, 2017. ECF No. 194. In accordance with the briefing schedule, plaintiffs filed a supplemental reply to the motions for attorneys' fees on June 30, 2017, and Faneuil filed a sur-reply on July 10, 2017. ECF Nos. 196, 198.[2]

On July 24, 2017, the undersigned held a hearing on the joint motion for approval of the settlement and plaintiffs' motion for attorneys' fees, expenses, and costs. Christian Connell, Esq., and Charles Yezbak, Esq., represented plaintiffs.[3] Jacqueline Hedblom, Esq., and Robert Vieth, Esq., represented Faneuil. The official court reporter was Paul McManus. At the hearing, the undersigned directed the parties to submit supplemental briefs explaining the number of minutes-per-day represented in the settlement amount. Plaintiffs and Faneuil filed those briefs on July 28, 2017. ECF Nos. 202, 203. Faneuil estimates in its supplemental brief that the settlement amount "represents approximately 2.1 minutes of uncompensated work per day." ECF No. 202 at 2. Plaintiffs' supplemental brief estimates that the settlement amount represents "all time lost due to rounding for all workers plus between 2.5 to 11.5 [ ] additional minutes per day, per person." ECF No. 203 at 2.

---

[2] On or about July 12, 2017, plaintiffs' counsel provided unredacted billing records to Faneuil's counsel, at the direction of the undersigned. ECF No. 200 at 1. The undersigned issued a protective order on July 13, 2017, declaring that the disclosure of plaintiffs' counsel's unredacted billing records to Faneuil's counsel does not waive any privilege or protection. ECF No. 200. Faneuil's counsel was allowed to submit an additional brief addressing the unredacted records, ECF No. 200 at 2, but declined to do so.

[3] Plaintiffs in this case are represented by Christian L. Connell, P.C. (Norfolk, Virginia); Yezbak Law Offices (Nashville, Tennessee); Barrett Johnston Martin & Garrison, LLC (Nashville, Tennessee); and Mays & Kerr, LLC (Atlanta, Georgia).

### III.  DISCUSSION

**A.     Six factors govern the approval of a Fair Labor Standards Act collective action.**

Claims for FLSA violations may only be settled if the settlement is approved by the Department of Labor or a court. *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005), *op. reinstated on reh'g*, 493 F.3d 454 (2007).  Before approving a settlement, a court must determine that the proposed settlement "is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982).  *See also Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310, 2009 WL 3094955, at *8 (E.D. Va. Sept. 28, 2009); *Boone v. City of Suffolk*, 79 F. Supp. 2d 603, 605 (E.D. Va. 1999).  In determining whether an FLSA settlement is fair and reasonable, courts consider a number of factors, including:

> (1) the extent of discovery that has taken place;
> (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation;
> (3) the absence of fraud or collusion in the settlement;
> (4) the experience of counsel who have represented the plaintiffs;
> (5) the probability of plaintiffs' success on the merits; and
> (6) the amount of the settlement in relation to the potential recovery.

*LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (citations omitted).  "There is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." *Lomascolo*, 2009 WL 3094955, at *10 (quoting *Camp v. Progressive Corp.*, No. Civ.A. 01–2680, Civ.A. 03–2507, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)).

**B.     Substantial discovery has taken place, and weighs in favor of accepting the settlement.**

The parties conducted significant discovery before reaching the proposed settlement. Fifty plaintiffs responded to Faneuil's written discovery requests. ECF No. 195 at 6. Faneuil produced over 60,000 pages of documents, as well as electronically-stored information. ECF No. 195 at 6. The parties took a total of fifteen depositions, including nine depositions of plaintiffs, five depositions of Faneuil's corporate representatives, and a deposition of Faneuil's outside counsel. ECF No. 195 at 6. Plaintiffs retained an expert witness to analyze the extensive wage and hour data. *See* ECF No. 139-1; ECF No. 195 at 6. Faneuil retained its own expert to examine badge swipe data. ECF No. 195 at 11. As noted above, the parties litigated several discovery disputes. Based on the foregoing, "it is clear that the Parties had adequate time to conduct sufficient discovery to 'fairly evaluate the liability and financial aspects of [the] case.'" *Lomascolo*, 2009 WL 3094955, at *11 (quoting *In re A.H. Robins Co.*, 88 B.R. 755, 760 (E.D. Va. 1988)). Accordingly, this factor favors finding that the settlement is fair and reasonable.

**C.     The stage of the proceedings weighs in favor of accepting the settlement.**

The stage of the proceedings, including the complexity, expense, and likely duration of the litigation, weighs in favor of finding that the settlement is fair and reasonable. The Court has already ruled on a motion to dismiss, two motions for conditional certification, a motion for equitable tolling, and multiple discovery motions. The parties engaged in private mediation and later participated in a settlement conference with a magistrate judge, where they ultimately reached the proposed agreement. Should litigation have continued, the parties would have completed discovery, which would have included additional document production and numerous depositions. Briefing would have continued, and the Court would have ruled on plaintiffs' motion for partial summary judgment, any summary judgment motion filed by Faneuil, and

Faneuil's anticipated motion for decertification of the class. The case may have proceeded to a jury trial, with the opportunity for appeals and post-trial motions. The parties also agree that all trial witnesses not already deposed would be deposed if the case were to go to trial, resulting in "potentially dozens more depositions." ECF No. 195 at 7.

Based on the foregoing, it is clear that "[t]hese proceedings advanced to a stage sufficient to permit the Parties and their counsel to obtain and review evidence, to evaluate their claims and defenses and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to [ ] trial." *Lomascolo*, 2009 WL 3094955, at *11. *See also In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009) ("[I]n cases in which discovery has been substantial and several briefs have been filed and argued, courts should be inclined to favor the legitimacy of a settlement.").

**D.    There is no apparent evidence of fraud or collusion.**

"In the absence of any evidence to the contrary, it is presumed that no fraud or collusion occurred." *Winingear v. City of Norfolk*, No. 2:12cv560, 2014 WL 3500996, at *3 (E.D. Va. July 14, 2014) (citing *Lomascolo*, 2009 WL 3094955, at *12). The parties in this case have engaged in protracted negotiations with the assistance of an independent mediator and a magistrate judge. There is no evidence that the settlement in this case was procured by fraud or collusion; accordingly, this factor favors finding that the settlement is fair and reasonable.

### E.  Plaintiffs' counsel are experienced in FLSA matters.

Plaintiffs are represented by competent attorneys from four different law firms, located in Norfolk, Virginia; Nashville, Tennessee; and Atlanta, Georgia.[4]  Counsel are experienced in wage and hour law and FLSA collective action litigation.  *See e.g.*, Garrison Decl. ¶¶ 3–4 (ECF No. 179); Yezbak Decl. ¶¶ 9, 11 (ECF No. 180); Mays Decl. ¶¶ 4–5 (ECF No. 181); Connell Decl. ¶¶ 6, 8–10 (ECF No. 182).  This factor weighs in favor of finding that the settlement is fair and reasonable.

### F.  The probability of plaintiffs' success on the merits favors acceptance of the settlement.

The fifth and sixth factors are "of the utmost importance, because a settlement 'can be adequate only in light of the strength of the case presented by the plaintiffs.'"  *Funkhouser v. City of Portsmouth*, 2015 WL 12765639, at *3 (E.D. Va. 2015) (quoting *In re Mills*, 265 F.R.D. at 256).  The parties continue to maintain that a *bona fide* dispute exists as to whether the plaintiffs would have prevailed at trial.  *See Duprey v. Scotts Co., LLC*, 30 F. Supp. 3d 404, 408 (D. Md. 2014) ("The settlement must 'reflect a [ ] fair and reasonable resolution of a *bona fide* dispute over FLSA provisions.'") (quoting *Lynn's Food Stores*, 679 F.2d at 1355).

Plaintiffs maintain that their legal position is strong, but nevertheless recognize that "there is no risk-free, expense-free litigation."  ECF No. 195 at 9 (internal quotation omitted).

Faneuil has asserted multiple defenses that could have reduced plaintiffs' expected recovery.  Faneuil insists that its rounding policy is consistent with the FLSA and existing caselaw precedents.  Faneuil disputes plaintiffs' evidence regarding the number of uncompensated minutes worked by employees.  The initial settlement agreement stalled because

---

[4] Plaintiffs, in their reduced demand, are seeking attorneys' fees for the work of attorneys Charles Yezbak, David Garrison, John Mays, Josh Frank, Daniel Aciniegas, and Christian Connell.  ECF No. 196 at 10 n. 4.

Faneuil reserved the affirmative defense of good faith, which could have reduced any recovery if accepted. *See* ECF No. 174 at 2–3, 5. There is also a live dispute about whether the appropriate recovery period was two years or three years. *See* ECF No. 195 at 10. Application of a two-year statute of limitations would have barred over 100 opt-in plaintiffs who will now obtain recovery under the settlement agreement. *Id*. at 12.

Due to the active dispute and the risks that both sides would face during a trial, this factor weighs in favor of finding that the settlement is fair and reasonable.

**G.     The amount of the settlement is adequate in relation to the potential recovery.**

Finally, the amount of the settlement in relation to the potential recovery is fair and reasonable. The parties agreed to a settlement payment of $285,000.00, in full resolution of plaintiffs' claims for wages, liquidated damages, and service payments to class members. ECF No. 194-1 at 1. The settlement term sheet provides that, after deducting the service payments owed to class members, the balance is to be divided equally between wages and liquidated damages. ECF No. 194-1 at 1.

Plaintiffs note that their strongest claim—for wages lost due to Faneuil's rounding policy—"would result in limited damages." ECF No. 195 at 10. Based on a three-year statute of limitations period, plaintiffs estimate that damages for time lost due to rounding are "less than $67,000.00." ECF No. 195 at 10. The parties' joint motion also states that Faneuil's expert calculated the rounding damages as $53,006.00 and $33,207.00 over three-year and two-year recovery periods, respectively. ECF No. 195 at 10. Plaintiffs contend that, if successful at trial, they would most likely recover damages amounting to between 7 and 12 minutes per day of uncompensated time, plus damages for time lost due to rounding. ECF No. 195 at 10–11. Counsel reached this number reviewing confidential client survey responses, deposition

testimony and interrogatory responses from plaintiffs and Faneuil corporate representatives, and other evidence produced during the course of discovery. *Id*. at 11. This amount of uncompensated time is consistent with what the plaintiffs claim the proposed settlement amount represents. ECF No. 203 at 2 (stating that the proposed settlement amount "recover[s] all time lost due to rounding for all workers plus between 2.5 to 11.5 minutes of additional minutes per day, per person.").[5]

In many cases, plaintiffs were forced to estimate the amount of uncompensated work from memory. ECF No. 195 at 10. This lack of documentation makes estimating a trial award uncertain, and supports the plaintiffs' decision to settle for less money than initially demanded. *See Winingear*, 2014 WL 3500996, at *4. Similarly, although plaintiffs contend that badge swipe data produced by Faneuil was unreliable, the settlement appears to account for the effect of such evidence upon plaintiffs' case. ECF No. 195 at 11.

Considering the amount of the recovery combined with the obstacles faced by the plaintiffs, as well as the recovery they expected to receive at trial, the Court finds that the amount of the settlement is fair and adequate. As such, this factor weighs in favor of approving the settlement.

## IV. CONCLUSION

Having considered the relevant factors, the undersigned recommends that the settlement reached by the parties is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions. Accordingly, the undersigned RECOMMENDS that the joint motion for settlement

---

[5] Faneuil's supplemental memorandum estimates that the back-pay amount of $137,287.50 "represents approximately 2.1 minutes of uncompensated work per day" per employee, over a three-year lookback period. ECF No. 202 at 1–2. The plaintiffs' calculation is based on the entire settlement, rather than the back-pay only, accounting for the stark difference. ECF No. 203 at 2 n. 4.

approval, ECF No. 194, be GRANTED.

## V. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within 14 days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
September 25, 2017