## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

TAMMY MCNEIL,
*On Behalf of Herself and*
*All Others Similarly Situated,*

          Plaintiffs,

v.                                       ACTION NO. 4:15cv81

FANEUIL, INC.,

          Defendant.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter comes before the Court on the plaintiffs' motion for attorney fees. ECF No. 178. By order of reference dated June 8, 2017, ECF No. 192, this matter was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons stated herein, the Court **RECOMMENDS** that the plaintiffs' motion be **GRANTED in part**, as set forth in this report and recommendation.

### I.    FACTUAL BACKGROUND

This is a collective action brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. The named plaintiff, Tammy McNeil ("McNeil"), filed an amended complaint on November 18, 2015, individually and on behalf of other similarly situated employees, against defendant Faneuil, Inc. ("Faneuil"). Am. Compl., ECF No. 24. Faneuil is a Delaware corporation with its principal office in Hampton, Virginia, and "employs thousands of

individuals nationwide who work handling telephone calls on behalf of [its] clients." Am. Compl. ¶ 8.

According to the amended complaint, Faneuil's call center employees went uncompensated for time worked at the beginning and end of their shifts and at the beginning and end of unpaid meal breaks, in violation of the FLSA. Am. Compl. ¶¶ 2, 30, 40, 51–55. This was allegedly due to several Faneuil time-keeping policies, such as a policy that rounded employees' time to the nearest quarter hour. Am. Compl. ¶ 15. Call center workers were prohibited from clocking in more than five minutes prior to the scheduled start of their shift and were also prohibited from clocking in late. Am. Compl. ¶ 17. Faneuil punished employees for arriving late. Am. Compl. ¶¶ 16–17. The amended complaint alleges that the rounding policy, when applied in conjunction with these other Faneuil time policies, disproportionately favored Faneuil at the expense of its employees and resulted in wage compensation for less than the actual time worked. Am. Compl. ¶ 17.

The Court granted plaintiffs' motion for conditional certification of a nationwide collective class and court-supervised notice, ECF No. 105, and over 1,000 individuals opted into the case (collectively "plaintiffs"). ECF No. 195 at 2, 4. The plaintiffs are represented by attorneys from four law firms: Christian L. Connell, P.C., Yezbak Law Offices ("YLO"), Barrett Johnston Martin & Garrison, LLC ("BJMG"), and Mays & Kerr LLC.

## II.    PROCEDURAL BACKGROUND

Plaintiffs filed an initial complaint on July 31, 2015. Compl., ECF No. 1. On October 14, 2015, plaintiffs moved for conditional certification of a nationwide class and court-supervised notice. ECF No. 14. Faneuil opposed the motion and moved to dismiss the complaint pursuant to Rule 12(b)(6). ECF Nos. 20, 26. In response, on November 18, 2015,

2

plaintiffs filed an amended complaint rather than file an opposition brief to Faneuil's motion to dismiss. ECF No. 24. Faneuil moved to dismiss the amended complaint, again pursuant to Rule 12(b)(6). ECF No. 36. On March 1, 2016, after full briefing on both matters, the Court held a hearing on the motion for certification and notice and the motion to dismiss. ECF No. 54. The Court denied Faneuil's motion to dismiss, and granted plaintiffs' motion for conditional certification and court-supervised notice as to employees in Virginia. ECF Nos. 55, 56. The Court took the issue of nationwide certification under advisement and allowed discovery to proceed on that issue. ECF No. 56. On March 11, 2016, the parties notified the Court that they could not agree on a proposed notice. ECF Nos. 61, 62. On March 16, 2016, the Court resolved this matter via email. ECF No. 72 at 4. After discovery on the issue, plaintiffs moved again for conditional certification of a nationwide class and court-supervised notice. ECF No. 85. The parties fully briefed the matter, and the Court granted plaintiffs' motion on August 3, 2016. ECF No. 105.

On March 11, 2016, plaintiffs filed a motion requesting that the FLSA statute of limitations be equitably tolled. ECF No. 59. The parties fully briefed the matter and the Court denied the motion at a hearing on April 12, 2016. ECF Nos. 72, 73.

Discovery opened on April 26, 2016. *See* ECF No. 76. On August 2, 2016, Faneuil moved to compel responses to its requests for production of documents and for production of documents from the plaintiffs. ECF No. 102. Plaintiffs opposed the motion, but the parties later submitted an agreed discovery plan, which the Court approved. ECF Nos. 108, 121, 124. On February 1, 2017, plaintiffs filed a motion to compel the production of documents and electronically-stored information, which Faneuil opposed. ECF Nos. 131, 142. On February 13, 2017, in an effort to obtain employment-related information, plaintiffs issued subpoenas to

3

produce documents to three non-party vendors who maintained e-mail and timekeeping systems for Faneuil. ECF Nos. 150, 150-1, 150-2, 150-3. In response, Faneuil moved to quash the subpoenas and moved for entry of a protective order to require that plaintiffs obtain leave of court before issuing any other subpoenas to Faneuil's third-party software vendors. ECF No. 149. The parties participated in private mediation on March 9, 2017, with Robert Boston of Waller Lansden Dortch & Davis, LLP, but were unable to reach an agreement at that time. ECF No. 195 at 3. The parties "resumed discovery, which included the depositions of four of Faneuil's corporate representatives, additional written discovery requests, and related motion[s] practice." *Id.*

At a hearing on April 6, 2017, the Court heard oral argument on plaintiffs' motion to compel and Faneuil's motion to quash subpoenas and for a protective order. ECF No. 155. As to plaintiffs' motion to compel, the Court ordered that Faneuil produce certain categories of material and ordered that plaintiffs be allowed to conduct further depositions. ECF No. 156. The Court granted in part and denied in part Faneuil's motion to limit the scope of one of plaintiffs' subpoenas. ECF No. 157. The parties also voluntarily agreed to limitations on the three subpoenas. *Id.*

On April 7, 2017, plaintiffs moved for partial summary judgment and for leave to file a subsequent motion for summary judgment as to discrete issues. ECF No. 158. On April 14, 2017, Faneuil filed a motion to compel the depositions of 24 opt-in plaintiffs. ECF Nos. 163, 164, 164-11.

On April 21, 2017, before further briefing on plaintiffs' motion for partial summary judgment or Faneuil's motion to compel, the parties filed a joint motion notifying the Court that they had reached a settlement and requesting that the Court hold a hearing for approval of the

4

settlement agreement. ECF No. 165.  On May 4, 2017, plaintiffs filed a position statement describing the settlement terms agreed to by plaintiffs. ECF No. 167.  Plaintiffs requested that the Court approve the settlement as described, or, in the alternative, that the Court find "that there was no meeting of the minds between the parties and enter a new scheduling order establishing a new trial date." ECF No. 167 at 1.  The next day, Faneuil moved to enforce and approve the settlement agreement, stating that, after providing notice to the Court of the settlement, plaintiffs "have attempted to fundamentally change the material terms of the agreement." ECF No. 169 at 1.  The Court held a hearing to address settlement approval on May 10, 2017. ECF No. 171.  At the hearing, the Court found that the case had not settled. ECF Nos. 171, 173.  The Court ordered the parties to engage in a settlement conference with United States Magistrate Judge Douglas E. Miller.  ECF Nos. 171, 173.

On May 26, 2017, prior to the settlement conference, plaintiffs filed a motion for attorney fees, expenses, and costs. ECF No. 178.  At the settlement conference on June 6, 2017, the parties "reached an agreement on all of the matters set for trial, except that they reserved the issue of determining reasonable attorneys' fees to this Court." ECF No. 192 at 1.  Specifically, the parties agreed that Faneuil will pay $285,000.00 "in full settlement of [plaintiffs'] claims for wages, liquidated damages, and service payments to class members," and that plaintiffs constitute a prevailing party under the FLSA. Settlement Term Sheet, ECF No. 194-1 at 1.  The parties also agreed to prepare additional briefing on the issue of attorneys' fees, and the undersigned set a briefing schedule. ECF Nos. 192, 193.

The parties filed a joint motion for approval of the settlement on June 30, 2017. ECF No. 194.  In accordance with the briefing schedule, plaintiffs filed a supplemental reply to the motions for attorneys' fees on June 30, 2017, and Faneuil filed a sur-reply on July 10, 2017.

ECF Nos. 196, 198.[1]

On July 24, 2017, the undersigned held a hearing on the joint motion for approval of the settlement and plaintiffs' motion for attorneys' fees, expenses, and costs. ECF No. 201. At the hearing, the undersigned directed the parties to submit supplemental briefs explaining the number of minutes-per-day represented in the settlement amount. Plaintiffs and Faneuil filed those briefs on July 28, 2017. ECF Nos. 202, 203. Faneuil estimates in its supplemental brief that the settlement amount "represents approximately 2.1 minutes of uncompensated work per day." ECF No. 202 at 2. Plaintiffs' supplemental brief estimates that the settlement amount represents "approximately 7.5 minutes (plus minutes lost to rounding) per Plaintiff, per day." ECF No. 203 at 2.

On August 25, 2017, plaintiffs filed a motion for separate reports and recommendations on the joint motion for settlement approval and the motion for attorney fees. ECF No. 204. Faneuil did not oppose this motion. ECF No. 205. On September 25, 2017, the undersigned granted that motion and issued a report and recommendation, recommending that the settlement be approved. ECF Nos. 206, 207.

## III.    STANDARD OF REVIEW

Traditionally, under the "American Rule," each party to a lawsuit pays its own attorney's fees, "win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015). The FLSA is just such a statute. In an FLSA action, a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a

---

[1] On or about July 12, 2017, plaintiffs' counsel provided unredacted billing records to Faneuil's counsel, at the direction of the undersigned. ECF No. 200 at 1. The undersigned issued a protective order on July 13, 2017, declaring that the disclosure of plaintiffs' counsel's unredacted billing records to Faneuil's counsel does not waive any privilege or protection. ECF No. 200. Faneuil's counsel was allowed to submit an additional brief addressing the unredacted records, ECF No. 200 at 2, but declined to do so.

reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). "The payment of attorney's fees to employees prevailing in FLSA cases is mandatory." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984). This is intended to "insure effective access to the judicial process" by those who might otherwise be precluded due to financial constraints. *Fegley v. Higgins*, 19 F.3d 1126, 1134–35 (6th Cir. 1994). Plaintiffs are considered to have prevailed for the purpose of awarding attorneys' fees "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992).

In calculating an attorneys' fee award, the Court must first determine the "lodestar" amount, which is a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). Calculating the lodestar figure is "[t]he most useful starting point for determining the amount of a reasonable fee," because it "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). To assess the reasonableness of both the rate and amount of hours expended, the Court considers and weighs the twelve factors identified in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), as adopted by *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). These factors (the "*Johnson* factors") include:

(1) The time and labor required;
(2) The novelty and difficulty of the questions raised;
(3) The skill required to properly perform the legal services rendered;
(4) The preclusion of other employment by the attorney due to acceptance of the case;
(5) The customary fee;
(6) Whether the fee is fixed or contingent;
(7) Time limitations imposed by the client or the circumstances;
(8) The amount involved and the results obtained;

(9)    The experience, reputation, and ability of the attorneys;

(10)  The undesirability of the case;

(11)  The nature and length of the professional relationship with the client; and

(12)  Awards in similar cases.

*Barber*, 577 F.2d at 226 n. 28; *Daly v. Hill*, 790 F.2d 1071, 1075 n.2 (4th Cir. 1986).

After calculating the lodestar and applying the *Johnson* factors, the Court subtracts fees for unsuccessful claims and awards a percentage based on the result achieved for the plaintiff. *Grissom*, 549 F.3d at 321. The Court does this, while keeping in mind that "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith . . . the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436.

## IV.    DISCUSSION

### A. Lodestar Analysis

The settlement terms stipulate that the plaintiffs are prevailing parties for the purpose of recovering attorneys' fees, and are thus entitled to a fee award. ECF No. 15 at 5. The plaintiffs initially asked for $939,336.25 in attorneys' fees. ECF No. 178 at 1. After Faneuil objected, plaintiffs filed a reply in which they reduced their fee demand to $870,651.25 as an exercise of "billing judgment." ECF No. 196 at 2, 11. This $68,685.00 difference represents the fees incurred by workers other than the eight main time-keepers in the case. *Id.* at 11.[2] The Court will first determine the lodestar figure "by multiplying the number of reasonable hours expended times a reasonable rate." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (quoting *Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243 (4th Cir. 2009)).

---

[2] The eight time-keepers are attorneys Charles Yezbak, David Garrison, John Mays, Josh Frank, Daniel Arciniegas, and Christian Connell, and paralegals Daniel Craig and Rain Xue. ECF No. 196 at 11 n.4.

## 1. Reasonable Rate

A party that seeks attorneys' fees "bears the burden of establishing the reasonableness of the hourly rates requested." *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987). Generally, the moving party will submit affidavits from disinterested counsel, evidence of awards in similar cases, or other specific evidence. *Project Vote/Voting for America, Inc. v. Long*, 887 F. Supp. 2d 704, 710 (E.D. Va. 2012). "The reasonable rate is 'to be calculated according to the prevailing market rates in the relevant community.'" *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 596 (E.D. Va. 2016) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). For the purpose of determining the prevailing rate, the relevant market "is ordinarily the community in which the court where the action is prosecuted sits." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). "Nevertheless, 'the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally.'" *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988) (quoting *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 (7th Cir. 1982). The Fourth Circuit has identified "two questions to be asked in determining whether an exception to the general rule should be granted." *Id.* First, "are services of like quality truly available in the locality where the services are rendered[?]" *Id.* Second, "did the party choosing the attorney from elsewhere act reasonably in making that choice?" *Id.*

In determining the reasonable rates, the Court is required to consider the relevant *Johnson* factors. *Barber*, 577 F.2d at 226 n.28.[3] Analyzing the second *Johnson* factor, the novelty and difficulty of the questions raised, and the third *Johnson* factor, the skill required to properly perform the legal services rendered, the Court notes, as it has previously, that the legal issues in the case were not particularly complicated. *See* ECF No. 174 at 5–6. That being said, managing

---

[3] The Court does not consider the *Johnson* factors in numeric order, but instead considers factors together that are tied to closely related topics.

litigation and a collective action with over 1,000 plaintiffs is a complex task necessarily requiring skill. Also related are *Johnson* factors one, the time and labor expended, and seven, the time limitations imposed. Managing this case required a great deal of time and effort, and while the Court is going to scale back some of the requested hours as detailed in Part IV.A.2., the Court recognizes that undertaking a case such as this was a significant commitment. *See Hargrove v. Ryla Teleservices, Inc.*, No. 2:11cv344, 2013 WL 1897027, at *7 (E.D. Va. Apr. 12, 2013) (noting, in an FLSA under-compensation case, that "[t]he legal questions were not particularly novel," but nevertheless finding that the hours worked were reasonable in light of counsel's "detailed factual inquiry.").

Turning to *Johnson* factor four, the opportunity costs in pressing the litigation, plaintiffs assert that, because this case involved significant discovery, counsel had to turn down or delay other cases, resulting in significant opportunity costs. ECF No. 178 at 10. Among the declarations received by the Court, however, Charles Yezbak is the only attorney to assert that he turned down work due to this case. ECF No. 180 at ¶ 31. Mr. Yezbak has billed 596 hours to this matter since it began. While this number is not insignificant, it does average out to less than one hour per day, not enough time to preclude a great deal of extra work. The fact that plaintiffs' counsel were spread across four law firms is also likely to have allowed counsel to balance this case effectively with other cases comprising their workload.

The Court next considers *Johnson* factor five, the customary hourly rate of compensation charged to clients for similar work. In evaluating this factor, the Court considers the affidavits submitted by the plaintiffs regarding reasonable attorneys' fees and the customary hourly rates typically charged to clients for similar work in similar cases. *See Rum Creek Coal Sales*, 31 F.3d at 175 (determining that the customary rate is the rate that counsel could command in the market

based upon the rates paid to attorneys of "comparable skill in similar circumstances" and counsel's own typical fees for "similar services in similar circumstances").

Plaintiffs present several declarations regarding the reasonable rates in the Hampton Roads, Nashville, and Atlanta markets. ECF Nos. 183–87. However, the plaintiffs have made no showing that counsel of like quality to that of the capable Atlanta and Nashville firms were not available in the Newport News division. Instead, the plaintiffs argue that their rates are "commensurate with the local market rates." ECF No. 178 at 6. Accordingly, the Court will focus on the Newport News division as the relevant market. On this point, plaintiffs present declarations by Harris D. Butler, III (ECF No. 186), and Nicholas Woodfield (ECF No. 187), attesting that plaintiffs' counsels' rates were reasonable in this market.

Mr. Butler testifies that, in his opinion, plaintiffs' rates are reasonable. The Court notes, however, that plaintiffs' rates significantly exceed Mr. Butler's own. Mr. Butler has been practicing for 35 years and charges an hourly rate of $475.00. ECF No. 186 at 6. Mr. Yezbak has been practicing for 23 years and charges an hourly rate of $525.00. *Id.* Mr. Garrison has been practicing for 12 years and charges an hourly rate of $485.00, an hourly rate greater than Mr. Butler's, despite having practiced for 23 fewer years. *Id.* at 5.

Mr. Woodfield is based in the Washington, D.C. area, rather than the Newport News division. ECF No. 187 at 1. Mr. Woodfield asserts that he became familiar with rates in the local market through "reading other attorneys' fee applications and supplying affidavits." *Id.* at 2. Mr. Woodfield refers to the *Laffey* matrix as support for his opinion, despite the fact that this Court has already rejected Mr. Woodfield's use of the *Laffey* matrix in the past. *See Taylor v.*

*Republic Servs., Inc.*, No. 1:12cv523, 2014 WL 325169, at *5 (E.D. Va. Jan. 29, 2014)[4]; *see also Grissom*, 549 F.3d at 323 ("Plaintiff has provided no evidence that the *Laffey* matrix, which pertains to hourly rates of litigation attorneys in Washington, D.C., is a reliable indicator of the hourly rates of litigation attorneys in [Alexandria], Virginia."). While Mr. Woodfield does not rest his entire opinion on the *Laffey* matrix, the Court does not find Mr. Woodfield's opinion to be compelling on the reasonable rate question.

Next, the Court considers *Johnson* factor twelve, the hourly fee awards for attorneys in similar cases. Plaintiffs are seeking a blended rate of $341.81/hour. ECF No. 178 at 6. Plaintiffs justify this amount by citing to *Winingear v. City of Norfolk*, No. 2:12cv560, 2014 WL 3500996, at *6 (E.D. Va. July 14, 2014), where this Court approved a blended rate of $312.00/hour. Plaintiffs' argument that *Winingear's* $312.00 number is close enough to the $341.81 number asked for in this case misses the mark. First, the difference between the two rates is significant. Applying a blended rate of $312.00/hour to this case drops the fees to $794,719.84, a reduction of over $75,000.00. Second, as Faneuil points out, ECF No. 190 at 8– 9, there are several aspects of *Winingear* that distinguish it from this case. For example, the relationship between the settlement pool and the requested attorneys' fees in the two cases is vastly different. The parties in *Winingear* settled for $3,200,000.00, 35% of which was allocated towards attorneys' fees. *Winingear*, 2014 WL 3500996, at *1, *6. By contrast, this case settled for $285,000.00, which is roughly 33% of the asked-for attorneys' fees, almost a direct inversion

---

[4] The *Taylor* case was litigated in Alexandria, far closer to Washington, D.C., where the *Laffey* matrix is applicable, than is Newport News. This difference in market is meaningful. In *Jackson v. Estelle's Place, LLC*, No. 1:08cv984 (LMB/TRJ), 2009 WL 1321506, at *2–3 (E.D. Va. May 8, 2009), Judge Brinkema in Alexandria reduced Mr. Woodfield's $410.00/hour request to $350.00/hour. In *Castel v. Advantis Real Estate Servs. Co.*, 2:07cv435, 2008 WL 3348774, at *4 (E.D. Va. 2008), Judge Jackson in Norfolk reduced Mr. Woodfield's $350.00/hour request to $295.00/hour.

of *Winingear*.

Assessing the individual rates involved in *Winingear* further undermines plaintiffs' request. In *Winingear*, lead counsel James Shoemaker, with 23 years of experience, charged $385.00/hour, $140.00/hour less than Mr. Yezbak, who has also been practicing for 23 years, and $100.00/hour less than Mr. Garrison, who has 12 years of experience. ECF No. 135-1 (Case No. 2:12cv560). Additionally, *Winingear* stands out from other FLSA fee awards in this Court as a high-water mark. *See, e.g., Gregory v. Belfor USA Grp., Inc.*, No. 2:12cv11, 2014 WL 468923, at *5–6 (E.D. Va. Feb. 4, 2014) (approving a blended rate of approximately $240.00/hour); *Kennedy v. A Touch of Patience Shared-Housing, Inc.*, 779 F. Supp. 2d 516, 526 (E.D. Va. 2011) (approving an average rate between the attorney and the paralegal of approximately $240.00/hour); *Walker v. Dovetails, Inc.*, No. 3:10cv526-HEH, 2010 WL 5878336, at *3–4 (E.D. Va. Nov. 30, 2010) (approving an average rate of approximately $227.00/hour after reducing the paralegal rate from $100.00/hour to $60.00/hour); *Castel v. Advantis Real Estate Servs. Co.*, 2:07cv435, 2008 WL 3348774, at *4 (E.D. Va. Aug. 8, 2008) (reducing an average rate of approximately $218.00/hour to approximately $188.00/hour).

Plaintiffs' counsel also points to a letter from Williams Mullen to Faneuil in 2013 showing that Williams Mullen charged Faneuil hourly rates ranging from $310.00 to $645.00 for partners, $225.00 to $380.00 for associates, $140.00 to $215.00 for paralegals, and $160.00 to $210.00 for litigation support. ECF No. 178 at 7. The Court is not persuaded that this letter is entitled to much weight. The rates specified in the letter vary greatly. Presumably, these rates are affected by many factors that cannot be determined from the letter (factors relevant to a reasonability determination), such as the market and whether the legal work is for employment litigation or other work.

With respect to *Johnson* factor ten, the undesirability of the case within the legal community, plaintiffs present no evidence that the case was in some way undesirable. With respect to *Johnson* factor eleven, the nature of the professional relationship between the plaintiff and her attorneys, counsel has described McNeil as an "exemplary class representative," who provided "invaluable assistance to counsel throughout this litigation." ECF No. 195 at 4. These factors therefore do not justify a higher fee.

With respect to *Johnson* factor six, the attorneys' expectations at the outset of litigation, plaintiffs' counsel in this case have all performed their services on a contingent fee basis. ECF No. 178 at 8. Contingency fees allow individuals who would otherwise have difficulty obtaining representation to access the courts. The fee-shifting provision of the FLSA was intended to serve this same goal of opening access to the courts. Contingency fees also transfer a great portion of the risk of loss to the attorneys. For these reasons, the existence of a contingency fee in this case justifies a higher fee award. *See, e.g., In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245–46 (4th Cir. 2010) (finding that the district court erred in reducing the fee award because it "fail[ed] to consider the access to the legal system that contingency fees like the ones herein provide").

Finally, with respect to *Johnson* factor nine, the attorneys involved in this case are experienced in wage-hour litigation and FLSA collective actions and are generally well-regarded. *See* Garrison Decl. ¶¶ 4–5, ECF No. 179; Yezbak Decl. ¶¶ 9–14, ECF No. 180; Mays Decl. ¶¶ 4–6, ECF No. 181; Hamilton Decl. ¶¶ 9–10, ECF No. 183; Russell Decl. ¶ 7, ECF No. 184; C. Butler Decl. ¶ 6, ECF No. 185. At this point, the Court will give little weight to *Johnson* factor eight, the amount involved and the results obtained, to "avoid giving double the weight to counsel's success, a key issue that the Fourth Circuit has directed courts to consider after establishing the lodestar." *Belfor*, 2014 WL 468923 at *8. The plaintiffs' degree of success will

14

be discussed further in Part IV.C.

For the foregoing reasons, the Court believes that a reduction in plaintiffs' asked-for rate is appropriate, and the Court will AWARD a blended rate of $290.00/hour.

## 2. Reasonable Hours

The next step in setting the lodestar is to determine the hours that were "reasonably expended." *Hensley*, 461 U.S. at 434 ("The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" (quoting S. Rep. No. 94-1011, p. 6 (1976))). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id. See also LaFleur*, 189 F. Supp. 3d at 594 ("hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority"). The prevailing party must submit evidence "supporting the hours worked" and the exercise of "billing judgment" that establishes that the hours expended were reasonable. *Hyatt v. Barnhart*, 315 F.3d 239, 253 (4th Cir. 2002).

In this case, plaintiffs seek recovery for 2,748.11 hours expended. ECF No. 178 at 3–4. Plaintiffs are not seeking to recover fees for the time worked since filing the fees petition on May 26, 2017.[5] ECF No. 196 at 12. Additionally, plaintiffs are not seeking recovery for 309.9 hours allegedly worked by those other than the eight main time-keepers in this case. ECF No. 196 at 11.[6]

Faneuil has several objections to plaintiffs' claimed hours in this case. First, Faneuil argues that plaintiffs improperly billed clerical and secretarial tasks. ECF No. 190 at 14. "Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of

---

[5] Plaintiffs assert these unclaimed fees total $69,926.00. ECF No. 196 at 12.

[6] Plaintiffs assert these unclaimed fees total $55,704.00. ECF No. 196 at 11.

who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). "Purely clerical activities, regardless of who performs them, are considered overhead and are not compensable as . . . attorney fees." *Abusamhadaneh v. Taylor*, No. 1:11cv939 (JCC/TCB), 2013 WL 193778, at *38 (E.D. Va. Jan. 17, 2013); *see also Belfor*, 2014 WL 468923, at *6–7 (excluding clerical tasks such as "index documents," "arrange for court reporter," and "[p]repare civil cover sheet"). "It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Jenkins*, 491 U.S. at 288 n.10. "Purely clerical work includes such tasks as the downloading, printing, and transmitting of documents and work related to scheduling." *Butler v. Directsat USA, LLC*, No. CA DKC 10-2747, 2016 WL 1077158, at *4 n.3 (D. Md. 2016).

In *Belfor*, this Court excluded eight items it deemed clerical. 2014 WL 468923, at *6–7. The Court cannot exclude individual items with such specificity in this case, for several reasons. First, the plaintiffs have billed too many clerical tasks for the Court to treat on an individual basis. The plaintiffs' billing records are inundated in entries for "scanned consent form" and "downloaded pleadings." *See, e.g.*, ECF No. 179-2 at 4. Some of these entries rise to an excessive level, such as a $105.00 charge to "download pleadings, calendar dates," *id.* at 25, and an $85.50 charge to "check mail." *Id.* at 30. There are also multiple charges to transport Ms. McNeil to and from the airport billed at an attorney's rate of $285.00 per hour. *Id.* at 42.

The second obstacle to line-by-line exclusion is that many entries in BJMG's billing records are block billed, containing such entries as "[r]eceive consent forms, add documents to TW, meet with DWG, book conference room in Norfolk, draft and send meeting letters, locate

new addresses and resend notice," billed for 5.40 hours on April 7, 2016, or "[p]rint docs, call clients, draft letter," billed on February 20, 2017. ECF No. 179-2 at 13, 39. This makes it impossible for the Court to determine the time spent on any one task, which is especially problematic considering that some of these charges contain clerical tasks. It is for this reason that "[b]lock billing entries are disfavored in fee award cases." *Crump v. U.S. Dept. of Navy*, 245 F. Supp. 3d 692, 710 (E.D. Va. 2017); *see also Denton v. PennyMac Loan Servs., LLC*, 252 F. Supp. 3d 504, 525 (E.D. Va. 2017). "The traditional remedy for block billing is to reduce the fee by a fixed percentage reduction." *Jones v. Southpeak Interactive Corp. of Del.*, No. 3:12cv443, 2014 WL 2993443, at *9 (E.D. Va. July 2, 2014), *aff'd*, 777 F.3d 658 (4th Cir. 2015).

This Court has also found cause to reduce fee petitions due to insufficient billing record specificity, as discussed in cases such as *LaFleur*, 189 F. Supp. 3d at 599–600, and *Crump*, 245 F. Supp. 3d at 709–10. For instance, in *Crump*, this Court found an entry to be inappropriately vague where it billed 0.9 hours for "review [of] Navy's document production," because "the entry fail[ed] to indicate what documents were reviewed." *Crump*, 245 F. Supp. 3d at 710. In this case, plaintiffs include numerous entries such as "[r]eview def's docs" for 2.90 hours, or "review documents produced by defendants" for 2.7 hours. ECF No. 179-2 at 14; ECF No. 180-1 at 15. This Court in *Crump* rejected an entry for a "conference regarding response to statute of limitations defense" because it did not indicate other people involved in the conference. *Crump*, 245 F. Supp. 3d at 710. Plaintiffs' billing records contain entries such as "[c]onference call reviewing discussing strategy" (ECF No. 180-1 at 33) and "[c]onference call re: discovery issues" (ECF No. 181-1 at 11), similarly with no explanation of who else was involved. Other entries just appear excessive, such as $798.00 to draft an email. ECF No. 178-2 at 34. These are but a few examples of a repetitive problem in assessing counsels' billing records.

There are inconsistencies in the billing records to note as well. On February 13, 2017, Josh Frank billed 10.5 hours for "T. McNeil & T. Ho[l]mes depos." ECF No. 179-2 at 38. That day, Scott Tift billed 10 hours for the same, and Mr. Yezbak billed 11.6 hours for "[a]ttend depositions of Tammy McNeil and Tracie Holmes." ECF No. 179-2 at 38; ECF No. 180-1 at 35.[7] For the March 9, 2017 mediation with Robert Boston, Mr. Yezbak billed 10 hours for "attend mediation." ECF No. 180-1 at 37. Mr. Garrison billed 12.5 hours for "[p]rep for mediation; mediation w. B. Boston." ECF No. 179-2 at 42. Josh Frank billed 12.3 hours for "mediation." *Id.* Mr. Mays billed 12.8 hours for "[a]ppear at mediation." ECF No. 181-1 at 6. All in all, plaintiffs' counsel billed a staggering $97,078.00 for the mediation. ECF No. 197 at 2.

Plaintiffs have broken their fee request into eleven categories. *Id.* A few of these categories merit discussion. For instance, plaintiffs claim to have spent $16,744.50 litigating the first motion to dismiss and amending the complaint. ECF No. 196 at 6. This amount appears excessive in light of plaintiffs' claim that they amended their complaint in order to avoid expending unnecessary resources briefing the issues. ECF No. 178 at 11. The plaintiffs justify this expense by claiming that Faneuil's motion to dismiss "required unnecessary work researching and determining proper pleading standards." *Id.* The plaintiffs cannot justify such a heavy fee for researching proper pleading standards when counsel profess to be experienced at filing such cases, especially because counsel should have determined the proper pleading standards prior to filing their first complaint.

The Court finds that its obligation to allow only a reasonable fee award justifies adjustment to the hours claimed. *See In re A.H. Robins Co., Inc.*, 86 F.3d 364, 373 (4th Cir.

---

[7] While there "is no *per se* rule preventing more than one attorney from participating . . . at depositions," *Belfor*, 2014 WL 468923 at *7, the Court notes the inconsistencies, the expense in flying three out-of-state attorneys to Norfolk for the depositions, and the lack of specificity as to which attorney defended each deposition.

1996) ("A court abuses its discretion if it allows a fee without carefully considering the factors relevant to fair compensation." (citing *Barber*, 577 F.2d at 226)). While Faneuil has objected to certain entries within the plaintiffs' fee request, it has not suggested a specific reduction to the Court. Thus, the Court will reduce the billable hours by a reasonable percentage. *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application."). *Copeland v. Marshall*, 641 F.2d 880, 903 (D.C. Cir. 1980) (holding that it was reasonable for a district court to reduce a fee award without performing an item-by-item accounting of the attorney's hours).

For the foregoing reasons, the Court reduces the billable hours by 10% to 2,473.30 hours. Multiplying these reasonable hours by the reasonable rate specified above results in a lodestar of $717,256.71.

## B. Adjustment for Unsuccessful Claims

"After a lodestar figure is calculated, the court must determine whether the fee award should be reduced to reflect the time counsel spent on unsuccessful claims *that are unrelated* to the successful claims." *Crump*, 245 F. Supp. 3d 692 at 716 (citing *Robinson*, 560 F.3d at 244). "Where the plaintiff's claims are based on different facts and legal theories, and the plaintiff has prevailed on only some of those claims, . . . these unrelated claims [must] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989). However, when claims arise "out of a common core of facts" or are "based on related legal theories" "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley* 461 U.S. at

19

435. The Supreme Court has advised against viewing such a case as a series of discrete claims, and has instead instructed the district court to "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

In this case, the Court is unable to separate out the plaintiffs' claims.[8] These claims have a common core of facts and are based on related legal theories. Accordingly, the Court will not eliminate attorney fees for plaintiffs' unsuccessful, individual motions, but will instead take a more holistic approach to analyzing the plaintiffs' success in this case.[9] The Court turns to that question now.

## C. Adjustment for Degree of Success

Plaintiffs argue that the Fourth Circuit disapproves of adjusting the lodestar amount "'to account for results obtained and the quality of representation.'" ECF No. 178 at 4 (quoting *Daly* 790 F.2d at 1078). Plaintiffs cite a 1993 district court opinion from the Southern District of West Virginia for this proposition. ECF No. 178 at 4 (citing *Stacy v. Stroud*, 845 F. Supp. 1135, 1141 (S.D.W. Va. 1993). This opinion, however, is at odds with more recent Fourth Circuit jurisprudence expressly approving of adjusting the fee award based on plaintiff success after the

---

[8] By way of illustration, this case can be compared with *McAfee v. Boczar*, 906 F. Supp. 2d 484 (E.D. Va. 2012). In the present case, the plaintiffs alleged a violation of the overtime provisions of the FLSA in count one and sought a declaratory judgment on those same overtime provisions in count two. Am. Compl., ECF No. 24 at 11–12. In *Boczar*, the plaintiff alleged a Fourth Amendment violation (count one), malicious prosecution under state law (count two), and false imprisonment under state law (count three), and prevailed only on count one at trial. *Boczar*, 906 F. Supp. 2d at 487–488. The district court in *Boczar* found that the three counts involved a common core of facts, and the Fourth Circuit agreed with this aspect of the district court's opinion. *McAfee v. Boczar*, 738 F.3d 81, 92 (4th Cir. 2013). The claims in this case are even more intertwined than the three claims in *Boczar*.

[9] "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436–37.

lodestar has been calculated. *See McAfee*, 738 F.3d at 88 ("Finally, the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.") (internal citation omitted).

The plaintiffs further argue that "[t]he Fourth Circuit has recognized that the damage award in FLSA cases should not be the focus of a fee request," and proceed to quote from *Jackson v. Estelle's Place, LLC*, 391 F. App'x 239, 246 (4th Cir. 2010) (Gregory, J., dissenting). ECF No. 178 at 14. Plaintiffs fail to acknowledge, however, that they are quoting from a dissent. The Court will now quote from the *per curiam* majority opinion: "'the amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded.'" *Jackson*, 391 F. App'x at 244 (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)). In *Jackson*, the Fourth Circuit upheld the district court's decision to reduce the lodestar amount in a FLSA action by 25% in light of the modest relief achieved by the settlement. *Id.* at 242–44.

However, that the amount of damages is relevant does not mean that the fee award must be proportional. *City of Riverside*, 477 U.S. at 574. The amount of damages is instead "one of many factors that a court should consider in calculating an award of attorney's fees." *Id.* Proportionality is not the rule and Faneuil is incorrect in stating that "Plaintiffs' recovery for fees and costs should not exceed [the settlement amount.]" ECF No. 198 at 3.

In this case, both the plaintiffs and Faneuil succeeded in certain aspects of this litigation. Under the settlement agreement, the plaintiffs are the prevailing party on their only substantive claim for unpaid overtime compensation. The plaintiffs prevailed on several motions, including Faneuil's motion to dismiss, both motions for conditional certification, and a motion to compel discovery. Ultimately, the plaintiffs obtained a settlement amount of $285,000.00 for their

21

clients. Plaintiffs also indicate that Faneuil has also changed its rounding policy since this case was filed. ECF No. 195 at 12.

This number should be compared, however, to the amount of recovery sought. The plaintiffs estimate that the gross settlement represents "approximately 7.5 minutes (plus minutes lost to rounding) per Plaintiff, per day over a three-year recovery period."[10] ECF No. 203 at 2. This number differs significantly from the number in the amended complaint, which alleged 10 to 15 minutes before the start of each shift, several minutes at the beginning of meal breaks, two to five minutes at the end of meal breaks, and several minutes at the end of each shift. Am. Compl. ¶¶ 21, 31–32. Based on the allegations in the amended complaint, plaintiffs' expert calculated that the plaintiffs were owed up to $848,030.33 for uncompensated overtime hours, and that the total amount of damages would be as much as $1,696,060.66 with the inclusion of liquidated damages. ECF No. 190-3. There is a substantial difference between the $1,696,060.66 plaintiffs believed they were entitled to and the $285,000.00 they received in the settlement that the Court must take into account.[11]

Again, the Court finds that some reduction based on the plaintiffs' actual success relative to their initial time and compensation claims is appropriate. "There is no precise rule or formula" for reducing a fee award for a lack of success but the court "may simply reduce the award." *Hensley*, 461 U.S. at 436–37. At this stage, the Court will reduce the amount of

---

[10] Plaintiffs' expert estimated that 1.29 minutes per day were uncompensated due to rounding. ECF No. 190-5.

[11] This does not suggest that the settlement amount was unfair. As stated in the Court's report and recommendation recommending settlement approval, ECF No. 207, Faneuil had several defenses and the plaintiffs faced several obstacles to achieving full recovery, justifying settling for a lesser amount. ECF No. 207 at 10–11. At this stage, the Court views the ultimate settlement amount in light of the recovery sought by the plaintiffs, not in light of how much the plaintiffs would have been able to recover at trial.

attorneys' fees by 10% to account for the degree of success achieved by plaintiffs. This reduction results in a total fee award of $645,531.04.

## D. Costs of Litigation

In addition to attorneys' fees, the FLSA allows plaintiffs to recover "costs of the action" when a judgment is awarded under the Act. 29 U.S.C. § 216(b). As with fees, assessing reasonable costs rests within the sound discretion of the district court. *Roy v. Cty. of Lexington*, 141 F.3d 533, 549 (4th Cir. 1998).

In their first motion for fees and expenses, plaintiffs asked for $70,610.16 in expenses. ECF No. 178 at 18. In their reply to Faneuil's opposition memorandum, plaintiffs reduced their asked-for expenses by $118.90 to $70,491.26. ECF No. 196 at 15.[12] Plaintiffs break these costs into the following five categories:

(1) Discovery costs, including deposition transcripts and video: $13,736.74;
(2) Expert costs: $17,373.55;
(3) Mailing notice to putative plaintiffs and other administrative costs: $15,306.87;
(4) Travel costs: $17,231.70;
(5) Mediation costs: $6,959.30.

ECF No. 178 at 18.[13]

The Fourth Circuit has held that there is a presumption that the prevailing party will be awarded costs. *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999). However, as previously stated, the court has "considerable discretion" in deciding whether to award costs. *Constantino v. S/T Achilles*, 580 F.2d 121, 123 (4th Cir. 1978). "[W]here attorney's fees are expressly authorized by statute (as they are in 29 U.S.C. § 216(b))," the court "has authority to

---

[12] This reduction encompasses a $75.00 *pro hac vice* fee that was double billed and a $43.90 legal research charge that plaintiffs agreed to eliminate in "the interest of compromise." ECF No. 197 at 4.

[13] These numbers reflect the initial requested amounts.

include litigation expenses as part of a 'reasonable attorney's fee.'" *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988) (citing *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 623 (4th Cir. 1978)). These expenses can include such things as travel costs and deposition transcripts. *Id.* at 322–23.

Local Civil Rule 54(D) requires parties seeking to recover costs to "distinctly set forth each item thereof so that the nature of the charge can be readily understood." Local Civ. R. 54(D)(1). The party must also include "[a]n itemization and documentation for requested costs in all categories." *Id.* "Costs will be disallowed if proper documentation is not provided." *Id.*

The Court finds that some of the travel costs billed by plaintiffs are unreasonable. For example, on April 6, 2017, Mr. Yezbak and Mr. Mays billed as a travel expense $140.36 for dinner, an excessively expensive meal for two people. ECF No. 197 at 4; *see also* U.S. General Services Administration, *Meals and Incidental Expenses (M&IE) Breakdown*, (last reviewed Nov. 7, 2017), https://gsa.gov/portal/content/101518 (setting a per diem rate for dinner at $23 per person). Many other expenses are just designated "Meal" with no explanation even of how many diners were present, crucial information to the Court in determining whether such expenses were reasonable. The same can be said for YLO's entries for hotel rooms and flights, which contain no information about how many rooms or tickets were purchased. Due to some entries being insufficiently documented and other entries appearing to be unreasonable, the Court finds it appropriate to reduce plaintiffs' travel costs by 15%, to $14,646.95.

Faneuil also argues that the plaintiffs are not permitted to recover their expert witness costs under the FLSA. ECF No. 190 at 26–27. In their reply, the plaintiffs do not address this argument. *See generally* ECF No. 196. While the Fourth Circuit has not yet addressed whether expert fees are included in "costs" under section 216(b) of the FLSA, other federal courts of

appeals have. *See Gortat v. Capala Bros., Inc.*, 795 F.3d 292, 294 (2d Cir. 2015) ("We conclude that because § 216(b) does not explicitly authorize awards reimbursing plaintiffs for expert fees, the district court erred in granting such an award pursuant to this provision."); *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 405 (5th Cir. 2002) ("There is no express statutory authority in the ADEA or the FLSA to award expert witness fees for other than court-appointed expert witnesses").

The Second Circuit's reasoning in *Gortat* is persuasive here. The Supreme Court has stated on several occasions that a district court should not award expert witness fees absent explicit statutory authorization. *See Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy*, 548 U.S. 291, 301 (2006) ("[N]o statute will be construed as authorizing the taxation of witness fees as costs unless the statute refers explicitly to witness fees.") (internal quotation marks and brackets omitted); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) ("[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920.[14]").

Section 216(b) contains no such explicit language for the award of expert fees, referring only to "costs of the action." 29 U.S.C. § 216(b). When Congress has intended to include expert fees in an award of costs, it has expressly done so. *See, e.g.*, 15 U.S.C. §§ 2618(d), 2619(c)(2) (providing that a court may award the "costs of suit and reasonable fees for attorneys and expert witnesses"); 15 U.S.C. § 2060(c) ("A court may in the interest of justice include in such relief an award of the costs of suit, including . . . reasonable expert witnesses' fees."). In light of the Supreme Court's declaration in *Arlington* that the word "'costs' [is a] term of art [that] generally

---

[14] 28 U.S.C. § 1821 sets out the per diem and other allowances to be paid to witnesses before a United States court. 28 U.S.C. § 1920 specifies recoverable categories of costs.

does not comprise expert fees," 548 U.S. at 297, the Court does not deem it appropriate to award plaintiffs their expert fees in this case.

Because some of plaintiffs' requested costs lack sufficient specificity or are unreasonable, and because plaintiffs cannot recover expert witness fees under section 216(b), the Court finds it appropriate to reduce plaintiffs' requested costs to $50,532.96.

## V.  CONCLUSION

Having performed the required "lodestar analysis," considered all of the *Johnson* factors, and adjusted the lodestar figure to reflect the "degree of success achieved" by the plaintiffs, the Court **RECOMMENDS** that plaintiffs' motion for attorney fees be **GRANTED in part**. After making a downward adjustment to the total hours requested by plaintiffs and adjusting for overall success, the Court hereby **AWARDS** attorneys' fees to plaintiffs in the amount of $645,531.04. The Court further **RECOMMENDS** that plaintiffs' request for costs be **GRANTED in part**. After reducing the requested travel costs and eliminating the requests for expert fees, the Court **AWARDS** costs of $50,532.96.

## VI.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's

objections within 14 days after being served with a copy thereof.  *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.  A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

Robert J. Krask
United States Magistrate Judge

Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
November 8, 2017